T.C. Memo. 2015-39

UNITED STATES TAX COURT

BENJAMIN B. LECOMPTE III AND CATHLEEN B. LECOMPTE, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16657-12.                    Filed March 10, 2015.

P-H's wholly owned corporate employer adopted a
multiemployer welfare benefit plan (plan 1), which funded P-H's
interest in the plan by acquiring a life insurance policy (policy) on
P-H's life with a $7.8 million face value. Subsequently, P-H's
employer terminated its participation in plan 1 and adopted a single-
employer plan (plan 2) to which the policy was transferred. Ps treated
both plans as tax exempt and reported no income from either the
initial acquisition or the subsequent transfer of the policy. R issued a
notice of deficiency (notice) determining that P-H was taxable on the
value of his interest in the policy in the year of its transfer from plan 1
to plan 2, which R alleges was in one of the years in issue (2004-07).
R acknowledges that he does not consider plan 1 to be a qualified,
tax-exempt welfare benefit plan. Ps ask, first, that we summarily
determine that "the statute of limitations bars assessment" on the
grounds that R's acknowledgment necessarily means that P-H's
receipt of income equal to the value of his interest in the policy
occurred when plan 1 acquired the policy, which, according to Ps,
was in 1990, an admittedly closed year. Ps next ask that we
summarily determine that "the duty of consistency is not applicable."

[*2]  Held:  The notice was timely issued, and Ps' period of limitations defense fails, as does any defense of judicial or equitable estoppel; moreover, there are disputed issues of material fact that bar summary judgment.

Held, further, because Ps have not taken inconsistent positions, the doctrine of consistency is not applicable.

Robert Richard Pluth and Robert Edward Kolek, for petitioner Benjamin B. LeCompte III.

Cathleen B. LeCompte, pro se.

Angela B. Reynolds, Elke Esbjornson Franklin, and David Weiner, for respondent.

MEMORANDUM OPINION

HALPERN, Judge:  Respondent issued a notice of deficiency (notice) to petitioners in which he determined that petitioner Benjamin B. LeCompte III (Dr. LeCompte) received unreported income arising out of the transfer of a life insurance policy on his life (policy) to a nonexempt or nonqualified welfare benefit plan in either 2004, 2005, 2006, or 2007 (years in issue).  Petitioners assign error to respondent's determination and move for summary adjudication in

**[*3]** their favor (motion).  They ask that we summarily determine (1) that "the statute of limitations bars assessment" and (2) that "the duty of consistency is not applicable."  We will deny both requests.[1]

Unless otherwise indicated, all section references are to the Internal Revenue Code and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all dollar amounts to the nearest dollar.

## Background

We draw the following facts from the pleadings, admissions, discovery responses, and the parties' memoranda supporting and opposing the motion.  We believe the parties to be in substantial agreement as to the facts.

Dr. LeCompte was the sole shareholder in Benjamin B. LeCompte III, M.D., S.C. (corporation).  On December 31, 1990, the corporation adopted the Professional Benefit Trust Multiple Employer Welfare Benefit Plan and Trust (PBT plan or plan), a purported multiemployer plan alleged by its promoter to

---

[1]Rule 54(b) prohibits the joinder of motions except in circumstances not here pertinent.  In the motion, petitioners move for summary judgment in their favor based on an affirmative defense of the period of limitations and for partial summary judgment in their favor that the duty of consistency is not applicable. The two requests should have been separately made.  We will, however, deal with the motion as presented.  As necessary for clarity, we will refer to the first request as the summary judgment request and to the second request as the partial summary judgment request.

[*4] constitute a qualified welfare benefit fund or "10-or-more employer plan" under section 419A(f)(6). The plan was to provide Dr. LeCompte with a death benefit and a severance benefit. He was the only employee of the corporation covered by the plan. In order to fund its obligation to provide the stated benefits to Dr. LeCompte, the PBT plan acquired the policy, with a stated value of approximately $7.8 million.[2]

The plan (and, presumably, others like it) were promoted, organized, and administered by Tracy L. Sunderlage, against whom the United States obtained a permanent injunction in 2012, presumably enjoining him from promoting such plans. Mr. Sunderlage operated through Professional Benefit Trust, Ltd. (PBT), of which he was the chief executive officer.

In either 2003, 2004, or 2005, the corporation terminated its participation in the plan and, instead, adopted a single-employer plan, the Benjamin B. LeCompte, M.D. Employee Welfare Benefit Plan and Trust (successor plan). In connection with that change in plans, the PBT plan transferred the plan assets, i.e., the policy, to the successor plan.

---

[2]The premium notices mailed to the plan and successor plan trustee (PBT) from 2001 to 2008 all show a policy anniversary date of February 21, and each refers to the policy as "AmerUs Life Ins. policy 2252592 February 21, 1991."

**[*5]** Petitioners have consistently taken the position that neither the acquisition of the policy by the PBT plan, its transfer to the successor plan, nor the payment of premiums by either plan caused Dr. LeCompte to realize income, presumably, on the basis that both plans constituted qualified or tax-exempt welfare benefit plans.

Respondent issued the notice on the grounds that Dr. LeCompte received unreported income resulting from his participation in the PBT plan and successor plan in excess of $2 million for each of the years in issue, amounts representing the accumulated cash value of the policy on its yearly anniversary date plus the cost of current life insurance protection. Respondent also determined accuracy-related penalties under section 6662A or, alternatively, section 6662. Respondent concedes, however, that each of the years in issue constitutes an alternative position, and that petitioners are liable for tax relating to Dr. LeCompte's participation in the PBT plan and successor plan for only one of the years in issue, the year in which the policy was effectively transferred from the PBT plan to the successor plan.

In the petition, petitioners raise a first affirmative defense "based upon the expiration of the statute of limitations". In support of that defense, they aver:

> (a) The United States of America asserted in its complaint for permanent injunction against Mr. Sunderlage that the Plan constituted an illegal tax shelter.

**[\*6]**        (b) Respondent also asserts that the Plan constituted an illegal tax shelter.

(c) If such assertions are correct, then under IRC Section 61 the life insurance owned by the Plan should have been income to Petitioners in 1990, when the insurance was first acquired.

(d) However, Respondent missed his chance to assess tax because the statute of limitations as to the 1990 taxable year has already expired.  See, IRC Section 6511(a).

In the answer, in response to petitioners' first affirmative defense, respondent answers that (1) in failing to report income from the PBT plan on their 1990 tax return, petitioners represented that they participated in a valid welfare benefit plan, (2) respondent relied on that representation to his detriment, (3) petitioners now allege that any income received pursuant to the plan was received in 1990, and (4) petitioners are bound by the duty of consistency, which bars them from now claiming they received income from the plan in 1990.

Respondent admits:  "The * * * [PBT plan] was not a valid welfare benefit fund.  Therefore, it was an illegal tax shelter."

## Discussion

I.      Summary Judgment

Pursuant to Rule 121(a), "[e]ither party may move, with or without supporting affidavits or declarations, for a summary adjudication in the moving

**[*7]** party's favor upon all or any part of the legal issues in controversy." A summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits or declarations, if any, show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). A summary judgment may be made upon part of the legal issues in controversy. See id. In response to a motion for summary judgment, an adverse party may not rest upon mere allegations or denials of the moving party's pleading but "must set forth specific facts showing that there is a genuine dispute for trial." Rule 121(d). "The moving party bears the burden of proving that there is no genuine issue of material fact, and the Court will draw any factual inferences in the light most favorable to the nonmoving party." Anonymous v. Commissioner, 134 T.C. 13, 15 (2010).

II.     The Parties' Arguments

        A.      Petitioners

        Petitioners argue that we should grant summary judgment in their favor "because the expiration of the statute of limitations bars assessment." They do not, however, dispute that the limitations period for assessing tax liabilities for the years in issue remained open when respondent mailed the notice. Their claim is

**[*8]** that a deficiency, if there was one, arose in 1990, a closed year. Specifically, petitioners argue that, for 1990, both the three-year limitations period under section 6501(a) and the six-year limitations period under section 6501(e)(1)(A) have expired. In support of their argument, petitioners point to respondent's admissions that the PBT plan "was not a valid welfare benefit fund" and that it "was an illegal tax shelter."[3] Petitioners state that they dispute that the PBT plan constituted an illegal tax shelter, but they argue that, "if [respondent] * * * is correct, then under IRC Section 61 the life insurance policy owned by the Plan should have been income to Petitioners in 1990, the year the life insurance was first acquired" and the year in which the policy became effectively controlled by Dr. LeCompte. They conclude: "Respondent missed * * * [his] chance to assess tax because the statute of limitations as to the 1990 taxable year had already expired before Respondent issued * * * [his] notice of deficiency."

---

[3]Previously, on September 14, 2012, petitioners moved for summary judgment, a motion that was virtually identical to the motion before us. At the time of that motion, respondent had filed responses to petitioners' interrogatories and request for admissions in which he refused to acknowledge that the PBT plan constituted an illegal tax shelter. On February 8, 2013, we issued an order denying petitioners' motion on the ground that "there exists a genuine issue of material fact." Petitioners feel that respondent's amended responses, in which he acknowledges that the PBT plan was an illegal tax shelter and did not constitute a valid welfare benefit fund, have resolved all genuine issues of material fact, and that the case is now ripe for summary judgment in their favor.

**[*9]** Petitioners also argue, in response to respondent's argument to the contrary, that their position regarding the expiration of the limitations period for assessment does not violate the doctrine of the duty of consistency, which bars a taxpayer from disavowing a position asserted for a closed taxable year in order to obtain a tax benefit (or avoid or reduce a tax liability) for a later, open taxable year. In support of that argument, petitioners note that courts apply the doctrine "only in egregious cases of misrepresentation where the taxpayer attempts to game the system", citing a number of cases in which the taxpayer takes a position inconsistent with that taken for an earlier, closed year and affirmatively disavows the prior position. Petitioners allege that, "[i]n contrast, * * * [they] have always taken the position that the acquisition of the life insurance policy by the Plan and payment of * * * premiums do not cause * * * [them] to realize income * * * [and that they] have never changed and do not desire to change any prior representation."

Lastly, petitioners argue that the doctrine is inapplicable "because any possible inconsistency of Petitioners * * * [involves] a question of law * * * [not] a mistake of fact", and that only inconsistent representations of fact can trigger application of the doctrine.

**[\*10]** Petitioners conclude:

> [B]ecause under Respondent's theory Dr. LeCompte is effectively the owner of the life insurance policy, it is immaterial that the Plan converted from a multiemployer plan to a single employer plan. It is Respondent's position that Dr. LeCompte always had control over the life insurance policy. Therefore, a conversation [sic] from a multiemployer plan to a single employer plan has no tax effect and does not trigger additional income to Dr. LeCompte.

B.    <u>Respondent</u>

Respondent argues (1) that, because of consents entered into by petitioners extending the periods of limitations for 2004 through 2007, the only years of petitioners for which deficiencies in tax are now before the Court, no affirmative defense to the notice based on the period of limitations can succeed; (2) petitioners provide no support for their position that any amount includible in gross income was includible for 1990 and no other year; (3) the duty of consistency prevents petitioners from arguing that any assessment of tax attributable to the receipt of income from the corporation should have been made for 1990, a closed year; and (4) events occurred during the years in issue that cause income to be recognized to Dr. LeCompte for those years.

**[*11]** III.    Discussion

    A.    Period of Limitations

        1.    Affirmative Defenses

Since petitioners concede that the notice was timely mailed with respect to the years at issue, we agree with respondent that any affirmative defense based on the period of limitations must fail.  Petitioners, however, appear in truth to be raising a defense based not on the period of limitations but, rather, on estoppel; i.e., that having conceded that the PBT plan was not a valid welfare benefit fund and was, instead, an illegal tax shelter, respondent is estopped from determining any deficiency in petitioners' 2004 through 2007 Federal income tax.  If petitioners are raising an estoppel defense, it is likely based on either judicial estoppel or equitable estoppel.  Grounds exist, however, for neither defense.

Whatever implication may be drawn from respondent's admissions (i.e., that he missed his chance to tax Dr. LeCompte for 1990), respondent has not in this case or, as far as we know, in any other case, persuaded a court that Dr. LeCompte realized gross income for 1990 on account of a contribution made by the corporation to the PBT plan.  "Judicial estoppel is an equitable doctrine that prevents parties in subsequent judicial proceedings from asserting positions contradictory to those they previously have affirmatively persuaded a court to

**[*12]** accept." Huddleston v. Commissioner, 100 T.C. 17, 26 (1993); see also

Peking Inv. Fund, LLC v. Commissioner, T.C. Memo. 2013-288, at *28-*29. That

is not the case here.

In McCorkle v. Commissioner, 124 T.C. 56, 68 (2005), we described the

doctrine of equitable estoppel as follows:

> Equitable estoppel is a judicial doctrine that precludes a party
> from denying that party's own acts or representations that induce
> another to act to his or her detriment. E.g., Graff v. Commissioner, 74
> T.C. 743, 761 (1980), affd. 673 F.2d 784 (5th Cir. 1982). It is to be
> applied against the Commissioner only with utmost caution and
> restraint. E.g., Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992).
> The essential elements of estoppel are: (1) There must be a false
> representation or wrongful misleading silence; (2) the error must be in
> a statement of fact and not in an opinion or a statement of law; (3) the
> person claiming the benefits of estoppel must be ignorant of the true
> facts; and (4) he must be adversely affected by the acts or statements
> of the person against whom estoppel is claimed. E.g., Estate of
> Emerson v. Commissioner, 67 T.C. 612, 617-618 (1977); * * *

Petitioners fail to show the elements necessary to invoke equitable estoppel.

If nothing else, we cannot make a false representation or a wrongful misleading

silence out of respondent's failure to charge Dr. LeCompte with additional income

for 1990 (if, indeed, he had additional income for that year).

**[*13]**  2.  <u>Genuine Dispute as to a Material Fact</u>

Affirmative defenses aside, petitioners may be arguing that there is no genuine dispute as to any material fact and they are entitled to summary judgment as a matter of law.  <u>See</u> Rule 121(b).

As noted <u>supra</u>, petitioners consider respondent's admissions that the PBT plan "was not a valid welfare benefit fund" but was, instead, "an illegal tax shelter" from its inception to constitute an admission that the policy's cash value was properly includible in Dr. LeCompte's income for 1990, not for any of the years in issue.  But respondent's admission is arguably no more than an acknowledgment that the PBT plan was "not exempt from tax under section 501(a)", the first requirement for inclusion in income under section 402(b)(1).[4]  It is not an acknowledgment that the policy's cash value was required to be included in Dr. LeCompte's gross income "in accordance with section 83", the second requirement for inclusion under section 402(b)(1).  One might reasonably assume that respondent's acknowledgment that the PBT plan constituted "an illegal tax

---

[4]The PBT plan's status as a nonexempt trust is also indicated by a note to the financial statements contained in the annual independent auditor's reports with respect to the PBT plan that were attached to the Forms 5500, Annual Return/Report of Employee Benefit Plan, filed by the plan for 2003, 2005, and 2006.  In each case the note states:  "The Trust is a taxable trust and is not an exempt trust under Section 501(c)(9)."

[*14] shelter" indicates his agreement that the PBT plan must be disregarded and that Dr. LeCompte was the true, fully vested owner of the policy. But that is an assumption, not a fact. As noted supra, petitioners, as the moving party, bear the burden of proving that there is no genuine dispute about whether and when Dr. LeCompte's beneficial interest in the policy was substantially vested, within the meaning of section 1.83-3(b), Income Tax Regs. Petitioners have not met that burden. To begin with, the record to date does not contain a copy of the PBT plan, so we have no way of ascertaining Dr. LeCompte's rights with respect to the policy under that plan. Secondly, petitioners have not shown whether or when the plan assets (i.e., the policy) were "set aside from the claims of creditors of the * * * [corporation]", a provision that would have subjected the arrangement to section 83 inclusion in income. See sec. 1.83-3(e), Income Tax Regs. The lack of certainty regarding the application of section 83 to Dr. LeCompte's interest in the PBT plan creates a genuine issue of material fact precluding our granting of the motion. Moreover, as noted supra note 2, the record indicates that the effective date of the policy was February 21, 1991, so that, assuming petitioners' interest in the policy was substantially vested upon PBT's acquisition thereof, its cash surrender value was income to Dr. LeCompte for 1991, not 1990. Although the possibility that 1991, unlike 1990, remains open for assessment is remote, there is

**[*15]** nothing in the record that would conclusively negate that possibility. Thus, uncertainty as to the year in which the PBT plan acquired the policy constitutes a second genuine issue of material fact.

### 3. Conclusion

We will deny the summary judgment request because there is a genuine dispute as to material facts and, therefore, a decision may not be rendered as a matter of law.

### B. Duty of Consistency

In the answer, in response to petitioners' first affirmative defense, based on the period of limitations, respondent answers that he relied to his detriment on petitioners' failure to report income from the PBT plan on their 1990 tax return, that petitioners now allege that any income received pursuant to the plan was received in 1990, and that petitioners are bound by the duty of consistency, which bars them from now claiming they received income from the plan in 1990.

In LeFever v. Commissioner, 103 T.C. 525, 541-542 (1994), aff'd, 100 F.3d 778 (10th Cir. 1996), after stating that "[t]he equitable doctrine of 'quasi-estoppel' or 'the duty of consistency' applies in this Court", we described that doctrine as follows:

[*16] The "duty of consistency" is based on the theory that the taxpayer owes the Commissioner the duty to be consistent with his tax treatment of items and will not be permitted to benefit from his own prior error or omission. Southern Pac. Transp. Co. v. Commissioner, 75 T.C. 497, 838-839 (1980). The duty of consistency doctrine prevents a taxpayer from taking one position one year and a contrary position in a later year after the limitations period has run on the first year. Herrington v. Commissioner, * * * [854, F.2d 755, 757 (5th Cir. 1988), aff'g 87 T.C. 1087 (1986)] and cases cited therein.

A taxpayer gaining governmental benefits on the basis of a representation or asserted position is thereafter estopped from taking a contrary position in an effort to escape taxes. United States v. Matheson, 532 F.2d 809, 819 (2d Cir. 1976); Benitez Rexach v. United States, 390 F.2d 631, 632 (1st Cir. 1968); Kurz v. United States, 156 F. Supp. 99, 106 (S.D.N.Y. 1957), affd. 254 F.2d 811 (2d Cir. 1958).

Later in that Opinion, id. at 543, we cited with approval the three conditions for application of the duty of consistency as set forth in Beltzer v. United States, 495 F.2d 211, 212 (8th Cir. 1974):

(1) the taxpayer has made a representation or reported an item for tax purposes in one year,

(2) the Commissioner has acquiesced in or relied on that fact for that year, and

(3) the taxpayer desires to change the representation, previously made, in a later year after the statute of limitations on assessments bars adjustments for the initial year.

In Estate of Letts v. Commissioner, 109 T.C. 290, 297 (1997), we said: "The three elements of the duty of consistency refer to conflicting representations that are

[*17] made by a taxpayer * * * [w]hen these requirements are met, the Commissioner may act as if the previous representation is true, even if it is not, and the taxpayer may not assert the contrary."  An exception exists, however, in that the doctrine is not applicable to pure questions of law, as opposed to questions of fact and mixed questions of fact and law.  E.g., Herrington v. Commissioner, 854 F.2d 755, 758 (5th Cir. 1988), aff'g 87 T.C. 1087 (1986); Estate of Letts v. Commissioner, 109 T.C. at 302; Arberg v. Commissioner, T.C. Memo. 2007-244, 2007 WL 2416230, at *12.

Respondent is not quite correct where, in the answer, he avers that petitioners now allege that any income received pursuant to the plan was received in 1990.  That is not their allegation.  Petitioners aver that, if the plan constituted an illegal tax shelter, as respondent now admits, "then under IRC Section 61 the life insurance policy owned by the Plan should have been income to Petitioners in 1990, * * * [when the] insurance was first acquired."  Petitioners, however, dispute that the plan constituted an illegal tax shelter.  They have constantly taken the position that the acquisition of the life insurance policy by the plan and payment of premiums did not cause them to realize income.  Unless and until petitioners contradict that position, there is no inconsistency that they may be dutybound to forgo.

[*18] Finally, as discussed supra, we have insufficient information about the plan to determine whether, assuming petitioners should have reported plan-related income for 1990, their failure to do so was a mistake of law or, maybe, a mistake of fact or a mistake with respect to a mixed question of law and fact. See LeFever v. Commissioner, 100 F.3d at 788 (whether property qualifies for special use valuation is a question of law but actual use of the property involves a mixed question of law and fact "to which the duty of consistency may be applied").

We will deny the partial summary judgment request as not presenting an issue ripe for decision.

IV. Conclusion

We will deny the motion.

An appropriate order will be issued denying petitioners' motion.