# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20790

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

BARBARA L. HOLMES; BARBARA L. HOLMES, as Independent Executrix
of the Estate of Shirley H. Bernhardt; KEVIN W. HOLMES,

      Defendants - Appellants

United States Court of Appeals
Fifth Circuit

**FILED**
June 6, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-626

Before REAVLEY, HAYNES, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:*

A ten-year limitations period applies to government suits to collect tax deficiencies. Barbara and Kevin Holmes, both beneficiaries of the estate of Shirley Bernhardt, believed they had escaped the jaws of tax thanks to this ten-year limitations period. Ruling on cross motions for summary judgment, the district court held that they were estopped from making their limitations

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20790

argument. The district court also rejected the Holmeses' counterclaim for damages from a lien they alleged the Internal Revenue Service wrongly placed on their property. Finding no error in the district court's decision, we affirm.

## I.

Shirley Bernhardt died in October 1997. She left all she had to her nephew Kevin Holmes, his wife Barbara, and to other family members, whose share of the estate the Holmeses later acquired. Kevin is both a certified public accountant and a tax attorney. He prepared and filed an estate tax return in July 1998. The return reported a gross estate of $2,884,113.31 and claimed that $700,024.34 in tax was due. The estate paid this amount at that time. In June 2001, the IRS audited the estate and issued a notice of deficiency that pegged its value at $4,706,731; the Service calculated that the estate owed an additional $1,225,577 in tax.

The taxpayers did not agree and filed a petition in the United States Tax Court. In June of 2004, the court entered a stipulated decision that the estate owed an additional $215,264. The taxpayers never paid a nickel of this, and interest, penalties, and fees grew upon the neglected sum. By March of 2015, the IRS figured that the estate owed $532,739.95.

In 2013 and 2014, the IRS began placing liens on real property in the name of the estate and Barbara Holmes. It also issued a Notice of Intent to Levy that included a statement that the estate could request a Collection Due Process hearing if it wanted one. On October 5, 2013, the estate sought to avail itself of this opportunity and sent a letter, via certified mail, containing two forms: Form 12153, "Request for a Collection Due Process or Equivalent Hearing" and a Form 2848, "Power of Attorney" to the Service. This was

No. 16-20790

around the same time as a federal government shutdown (October 1 to October 16), and the parties contest if and when the IRS received the letter.

In May of 2014, Kevin wrote a letter to the IRS insisting that it must have received his October letter with the request for a due process hearing. Kevin enclosed a copy of the certified mail receipt showing that his October letter had been received. The IRS Office of Appeals went on to sustain the amount of the levy. Relying on the certified mail receipt that Kevin had provided, the decision explained that the Service considered the hearing request to have been received on October 6, 2013.

On March 10, 2015, the Service commenced this case in federal district court against Barbara, Kevin, and the estate in order to foreclose outstanding liens and obtain a money judgment for the unpaid taxes, penalties, and fees. Barbara and Kevin counterclaimed for damages under section 7433 of the tax code. They alleged that they had lost out on a chance to refinance their home at a lower rate of interest due to the filing of an improper lien, which they said they were not given notice of and should not have been filed against them personally but only against the estate.

The IRS moved for summary judgment on its own claim and the taxpayers' counterclaim. The taxpayers also sought summary judgment as to the Service's claim on limitations grounds. The district court granted the government's motion in part and denied the taxpayers' motion. The court rejected the taxpayers' limitations argument on estoppel grounds and found that the letter from a bank it cited to show damages on its counterclaim was incompetent summary judgment evidence. Rejecting part of the government's motion, the court did not enter summary judgment as to Barbara and Kevin personally. Following this order, the court entered its judgment.

Both sides moved to alter or reconsider the judgment. In response, the court entered an amended judgment that addressed the Service's right to

No. 16-20790

foreclose probate liens, imposed personal liability on Barbara and Kevin, and added prejudgment interest.

## II.

## A.

The taxpayers argue that the district court erred by not dismissing the government's claim as untimely. The Service generally has ten years from the date of assessment of a tax in which to file suit to collect it. 26 U.S.C. § 6502(a)(1). "The 'assessment,' essentially a bookkeeping notation, is made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls." *Laing v. U.S.*, 423 U.S. 161, 170 n.13 (1976); *see also* 26 U.S.C. § 6203 ("The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary."). Following the stipulated decision of the tax court, the Service, on July 16, 2004, entered a new assessment on its books reflecting the stipulated amount. It filed suit to collect that amount 10 years and 237 days later.

The Service contends that the limitations period was suspended for 241 days from October 5, 2013 until June 2, 2014, the former being the postmark date on the taxpayers' request for a hearing. That is because the running of the limitations is suspended during the pendency of the hearing. *Id.* § 6330(e)(1). The taxpayers respond that this provision cannot rescue the Service as the hearing process was not actually initiated until May 2014, after Kevin sent his letter to prove that the Service had received the request in October.

The district court found it unfair for the taxpayers to have waved about the certified mail receipt showing that the hearing request was sent and received in October, only to reverse course and insist during this litigation that it was not so. It held the taxpayers to the duty of consistency, an estoppel

doctrine developed in tax cases. *See Herrington v. CIR*, 854 F.2d 755, 757 (5th Cir. 1988). "The Supreme Court has long held that general principles of estoppel apply in tax cases." *Id.* (citing *R.H. Stearns Co. v. United States*, 291 U.S. 54 (1934); *Magee v. United States*, 282 U.S. 432 (1931)). The duty of consistency applies if three elements are met: "(1) a representation or report by the taxpayer; (2) on which the Commission has relied; and (3) an attempt by the taxpayer after the statute of limitations has run to change the previous representation or to recharacterize the situation in such a way as to harm the Commissioner." *Id.* at 758.

The district court was right to find these three elements satisfied. The taxpayers insisted that the Service received the request in October. Writing on their behalf, Kevin would brook no doubts—he said he *knew* the service received it "because it was in the package which contained my Form 2848 Power of Attorney for the estate." And indeed, why should he have scrupled to take the tone he did when he had hard evidence in his hands?

The record shows the second element was established as well. After it received Kevin's letter with the certified mail receipt, the Service graciously bowed to the evidence and accepted that the taxpayers had made a timely request. It gave them their hearing. The third element is satisfied by the fact that the taxpayers are now denying what they previously insisted to be true, that the CDP request was received in October, and are doing so to have the Service tossed out of court.

The taxpayers' arguments that the duty of consistency does not apply to their situation are unconvincing. They assert that the doctrine only applies when a taxpayer takes inconsistent positions from one tax year to the next. But a review of the cases shows the doctrine is not that narrow. It may be an important application of it, given tax matters like depreciation when "a transaction and its tax consequences are . . . projected into other tax years,"

*Johnson v. CIR*, 162 F.2d 844, 846 (5th Cir. 1947), but it is no essential piece. It forms no part of the elements the court recited in *Herrington*, 854 F.2d at 758, and it was not a concern in the leading Supreme Court cases. On the contrary, the Court emphasized that it was only applying basic principles of equity. *Stearns*, 291 U.S. at 61–62 ("Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong."); *Magee*, 282 U.S. at 434 ("The taxpayer benefited by the claim and is not in a position to contest its legality."); *see generally Young v. Higbee Co.*, 324 U.S. 204, 209 (1945) ("Equity looks to the substance and not merely to the form."). *Stearns* itself is an object lesson in the fact that the doctrine is not limited to depreciation cases, etc., but concerns representations that have the effect of delaying collection: *See Stearns*, 291 U.S. at 60 ("In substance the request was this: Please do not collect the tax for 1917, until you have completed the audit for the years 1918 to 1921 inclusive, and if there has been overassessment for those years, set it off as a credit.").

The taxpayers also point to *Herrington* for the proposition that "the duty of consistency does not apply when the inconsistency concerns a pure question of law and both the taxpayer and the Commissioner had equal access to the facts." *Herrington*, 854 F.2d at 758. As the above analysis shows, however, the inconsistency at issue concerns the date that the CDP request was received. Furthermore, the Service did not have equal access to the facts—the taxpayers had the certified mail receipt and so knew what they had sent and when it was received.

## B.

The district court also correctly ruled on the taxpayers' counterclaim. Kevin and Barbara brought it under section 7433 of the Revenue Code:

No. 16-20790

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the [Service] recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7433(a). The district court held that damages are an element of this cause of action. It cited an unpublished district court case. *See Whitney v. United States*, 2015 WL 11197828, at *2 (C.D. Cal. Dec. 9, 2015) ("Determining liability under Section 7433 is a two-step process: first, a plaintiff must prove that the IRS intentionally, recklessly, or negligently disregarded part of Title 26 in connection with the collection of the plaintiff's federal tax liability and, second, the plaintiff must provide evidence of damages."). On appeal, the taxpayers do not contest that damages are an element.

To establish that element, Kevin and Barbara said they were denied a loan and lost the opportunity to refinance their home at a better interest rate because of a lien the IRS had incorrectly placed, without proper notice, on them personally rather than on the estate. The district court held that the only evidence offered to show that they were denied the loan because of the lien—a rejection letter from a bank—was incompetent summary judgment evidence. The district court held that the letter ran afoul of the Federal Rules of Civil Procedure because it was unauthenticated, unsworn, and did not indicate that the statements in it were made from personal knowledge. It was error under the current version of Rule 56 to impose these requirements,[1] but Kevin and

---

[1] After the 2010 amendments to Rule 56, a party need not oppose summary judgment by way of affidavit or declaration but may simply point to "particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A). The list of requirements the district court found not satisfied apply to affidavits and declarations. FED. R. CIV. P. 56(c)(4). If other evidence—like the bank letter—is not presented in a form that would be admissible, then the other side may object on that ground. FED. R. CIV. P. 56(c)(2).

No. 16-20790

Barbara do not argue on appeal that the letter should have been admitted so we will not reverse on that basis.

Instead, they correctly point out that the IRS's motion for summary judgment attacked their counterclaim for failure to mitigate, not failure to prove damages. Generally, a court may not grant summary judgment on a ground not advanced by the parties unless it gives notice and a reasonable time to respond to the party at risk of summary disposition. Summary judgment is improper if there "was no reason for the [nonmoving party] to suspect that the court was about to rule on the motion." *Kibort v. Hampton*, 538 F.2d 90, 91 (5th Cir. 1976). We have sometimes vacated and remanded when "the district court provided no notice prior to granting summary judgment *sua sponte*, even where summary judgment may have been proper on the merits." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1398 (5th Cir. 1994) (quotation marks omitted).

The court will not vacate and remand, however, when the error is harmless. *See id.* at 1399. The burden is on the party asserting lack of notice to negate harmlessness by pointing to additional evidence it would offer on the issue. *See id.*; *Resolution Trust Corp. v. Sharif–Munir–Davidson Dev. Corp.*, 992 F.2d 1398, 1403 n.7 (5th Cir. 1993) ("When there is no notice to the nonmovant, summary judgment will be considered harmless if the nonmovant has no additional evidence or if all of the nonmovant's additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact."). Kevin and Barbara have not carried this burden. They do not identify any new evidence they would advance if given the chance on remand. Furthermore, they do not address harmlessness or the need to point to additional evidence in their brief. *See Ocwen Loan Servicing, L.L.C. v. Berry*, 852 F.3d 469, 472 (5th Cir. 2017) (identifying "the general rule that issues not briefed are waived").

No. 16-20790

\* \* \*

The judgment is AFFIRMED.